

FILED

NOV 2 5 2008

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

*POSTED ON WEBSITE*
*NOT FOR PUBLICATION*

### UNITED STATES BANKRUPTCY COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | ) Case No. 07-28781-D-13L |
| | ) |
| MICHAEL WERNER and | ) Docket Control No. WW-1 |
| BILLIE WERNER, | ) |
| | ) Date: November 18, 2008 |
| Debtors. | ) Time: 1:00 p.m. |
| _____ | ) Dept: D |

**This memorandum decision is not approved for publication and may
not be cited except when relevant under the doctrine of law of
the case or the rules of claim preclusion or issue preclusion.**

<u>MEMORANDUM DECISION</u>

On July 29, 2008, the debtors herein, Michael Werner and
Billie Werner ("the debtors"), filed a Motion for Contempt and
Sanctions for Violation of the Automatic Stay, Sections 1322,
1325, and 1327, bearing Docket Control No. WW-1 ("the Motion"),
by which the debtors seek sanctions against the United States
Department of Veterans Affairs ("VA") for violation of the
automatic stay of 11 U.S.C. § 362(a).[1]  The VA opposes the
Motion.  For the reasons set forth below, the court will grant
the Motion in part.

<u>I.   INTRODUCTION</u>

The debtors filed the petition commencing this chapter 13
case on October 19, 2007.  In their master address list, the

_____

1.  Unless otherwise indicated, all Code, chapter, section
and Rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-
1330, and to the Federal Rules of Bankruptcy Procedure, Rules
1001-9036, as enacted and promulgated after the effective date
(October 17, 2005) of the Bankruptcy Abuse Prevention and
Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23
(2005) (hereinafter the "BAPCPA").

1    debtors listed the VA at a post office box in Saint Paul,

2    Minnesota, and thus, it was to that address that the notice of

3    commencement of the case was mailed on November 2, 2007.[2]  On

4    December 21, 2007, the VA filed a proof of claim for $24,932.  On

5    December 26, 2007, this court confirmed the debtors' chapter 13

6    plan.

7         On or about February 29, 2008, the Department of the

8    Treasury, Financial Management Service applied the debtors' 2007

9    federal income tax refund, $311, to their debt to the VA.[3]  On

10   March 17, 2008, the debtors' counsel, Mark Wolff, wrote to the VA

11   complaining that the setoff constituted a collection effort in

12   violation of the automatic stay and demanding the immediate

13   return of the tax refund and an additional payment of $3,500 in

14   damages.  Mr. Wolff sent the letter to the VA at the address of

15   its regional counsel in Oakland, California, which is the address

16   the VA has caused to be listed in the Roster of Public Agency

17   Addresses maintained by the clerk of this court ("the VA's Roster

18   address").[4]

19   / / /

20

---

21        2.  See Certificate of Mailing, filed November 2, 2007, DN

   11.  (Throughout this decision, "DN" will refer to the number of

22   the cited document on the court's docket.)

23        3.  For ease of reference, the court will refer throughout

   this decision to the debtors' "debt to the VA," rather than the

24   debtors' alleged debt to the VA.  Despite these references,

   nothing herein is meant to suggest that the debtors, or either of

25   them, owes or does not owe a debt to the VA.  The court is not

   called upon to make any such finding, one way or the other, at

26   this time.

27        4.  The clerk's office maintains the Roster pursuant to

   Local Bankruptcy Rule 2002-1(b), which requires debtors in this

28   district to utilize the address provided by the particular

   governmental agency for listing in the Roster.

On April 10, 2008, apparently in response to Mr. Wolff's letter, the United States Treasury issued a check for $294 payable to the chapter 13 trustee in this case, Lawrence J. Loheit, with the notation, "A/C Bille [sic] Jaramillo," which is a former name of debtor Billie Werner.[5]  The trustee's office received the check on April 15, 2008, but was unable to link it to this case because it referred to Billie Jaramillo rather than Billie Werner.  This resulted in a further delay until June 5, 2008, when the trustee's office issued a $294 check to the debtors.

On June 2, 2008, the Internal Revenue Service sent the debtors a notice that they were entitled to an economic stimulus payment of $600.[6]  On or about June 6, 2008, the Department of the Treasury, Financial Management Service intercepted the stimulus payment and offset it against the debt to the VA.

Meanwhile, as of June 2, 2008, prior to the time the chapter 13 trustee issued his $294 check to the debtors, the debtors and their counsel had no reason to believe any action had been taken in response to Mr. Wolff's March 17, 2008 letter.  Thus, on June 2, 2008, Botum Chhay, an associate in Mr. Wolff's office, began what developed into a series of e-mails to and from Assistant U.S. Attorney Ana Maria Martel (referred to herein as "the VA's

_____

5.  The VA now explains that the $17 variance between the check amount and the refund amount was a "debt management fee" that has since been returned to the debtors.  See United States' Response Re Debtors' Alleged Damages, filed November 10, 2008, DN 48, 2:3-5.

6.  This payment, issued pursuant to the Economic Stimulus Act of 2008, Pub. L. No. 110-185, 122 Stat. 613, will be referred to as the "stimulus payment."

- 3 -

counsel"). On June 20, 2008, Ms. Chhay notified the VA's counsel

that the VA had set off the stimulus payment as well as the tax

refund. The exchange ended with a final e-mail from the VA's

counsel on June 20, 2008. At no point prior to July 29, 2008,

the date on which the Motion was filed, did the VA's counsel

inform Ms. Chhay that the tax refund had been returned (albeit to

the chapter 13 trustee) or that the stimulus payment would be

returned. In fact, the series of e-mails would reasonably lead

one to conclude that if the debtors wanted to have their tax

refund and stimulus payment returned, they would need to file a

motion.

The debtors responded to the VA's inaction by filing the

Motion on July 29, 2008. On August 15, 2008, the trustee's

office received from the United States Treasury a check for $583

(the $600 stimulus payment less a $17 debt management fee), and

on August 21 and September 4, 2008, checks for $17 each,

representing the two debt management fees previously withheld.

II. ANALYSIS

A creditor who willfully violates the automatic stay exposes

himself or herself to an award of damages, including costs and

attorney's fees, in favor of an injured debtor. § 362(k)(1).

The Ninth Circuit Court of Appeals defines such a "willful

violation" as follows:

> A "willful violation" does not require a specific
> intent to violate the automatic stay. Rather, the
> statute provides for damages upon a finding that the
> defendant knew of the automatic stay and that the
> defendant's actions which violated the stay were
> intentional. Whether the party believes in good faith
> that it had a right to the property is not relevant to
> whether the act was "willful" or whether compensation
> must be awarded.

- 4 -

In re Bloom, 875 F.2d 224, 227 (9th Cir. 1989).

In this case, the VA knew of the debtors' bankruptcy filing as early as December 21, 2007, when it filed its proof of claim. The VA relies for its principal defense on the highly technical and complicated new notice requirements imposed by the BAPCPA,[7] arguing that because the initial notice was not sent to the VA's Roster address, it was not "effective" notice. Thus, the VA contends it did not have effective notice until shortly after March 17, 2008, when it received Mr. Wolff's letter. New § 362(g)(2) might bear on this question,[8] but for the fact that the debtors have now confined their damages request to the time period after March 17, 2008.[9]

---

7. See KEITH M. LUNDIN, CHAPTER 13 BANKRUPTCY, 3D ED. § 365.1 (2000 & Supp. 2007-1).

8.

A monetary penalty may not be imposed on a creditor for a violation of a stay in effect under section 362(a) (including a monetary penalty imposed under section 362(k)) . . . unless the conduct that is the basis of such violation . . . occurs after such creditor receives notice effective under this section of the order for relief.

§ 362(g)(2).

9. Some further discussed is warranted, however. Kathy Medeiros signed the proof of claim filed on December 21, 2007, on behalf of the VA. In the proof of claim, Ms. Medeiros indicated that future notices should be sent to the VA at the office of its Regional Counsel in Martinez, California. She did not, however, apparently take any steps to verify that an offset in violation of the stay would not occur. It appears to be the same Kathy Medeiros who now testifies that "[w]hen VA is properly notified that one of its debtors has filed bankruptcy, if the matter has been referred to TOP [the Treasury Offset Program], VA will advise Treasury to cease collection efforts until further notice." Ms. Medeiros also testifies that "[t]he Debtors' attorney did not notify the Regional Counsel's Office in Oakland that the Werners had filed bankruptcy until Mr. Wolf [sic] wrote

(continued...)

- 5 -

During the two and one-half months after Mr. Wolff sent his letter, the VA took no steps to inform him or the debtors that it would return the tax refund; thus, further action on Mr. Wolff's part was required.[10]  He assigned the task to Ms. Chhay, who, in turn, was referred by the IRS to Ms. Martel.

Ms. Chhay tried four times over the next few days to resolve the matter in a civil fashion with the VA's counsel.  The latter, however, immediately took a combative tone, asking if Ms. Chhay was sure she wanted "to open this can of worms for $311."  The VA's counsel suggested that the debtor may have "lied about his income, disability or dependents," she threatened to take the debtors' depositions, she said she would ask for attorney's fees if the matter were litigated, and she challenged Ms. Chhay's knowledge of community property law and the law on setoffs.  The VA's counsel concluded the discussions as follows:

> I am not going to educate you further.  If you think you have grounds, go right ahead and file.  However, check with Mark [Wolff].  He will tell you I don't bluff and fight hard.

---

9.(...continued)
to them on March 17, 2008," and that "[u]pon being notified of the Werners' bankruptcy, Regional Counsel notified the proper VA office to cause the TOP offset to stop until further notice."  In these circumstances, the court is not impressed with Ms. Medeiros' conclusion that "[t]he failure of the Debtors to properly notify the VA accounts for the failure to timely stop TOP [offset] collections on this matter."  See Declaration of Kathy Medeiros, filed August 19, 2008, DN 29, ¶¶ 32-36.

10.  The court recognizes that a check for the return of most of the tax refund was issued on April 10, 2008.  The parties have not addressed the question whether the check should have been issued to the debtors rather than the trustee, and the court expresses no view.  But certainly, notice should have been given to the debtors or their counsel, who was, after all, the one threatening to seek an award of damages.

- 6 -

1 | Exhibit G in Support of Motion for Sanctions, filed September 16,
2 | 2008, DN 37, p. 1.

3 |     The VA's counsel apparently failed to take the elementary
4 | step of contacting the VA, either during her exchange with Ms.
5 | Chhay or thereafter.  As a result, another five weeks passed.
6 | During that time, the debtors received the trustee's check for
7 | $294, with no explanation of its source, as apparently, none had
8 | been provided by the VA to the trustee.  The amount did not match
9 | up with the debtors' tax refund or their stimulus payment, and
10 | was $617 short of the total withheld by the VA on account of both
11 | payments.  And still, no notice was provided to either the
12 | debtors or their counsel by the VA or its counsel.  (In her
13 | capacity as attorney for the VA, Ms. Martel was acting as its
14 | agent.)

15 |     Thus, on July 29, 2008, the debtors filed the Motion.  There
16 | is nothing in the record from which the court might conclude that
17 | the return of the stimulus payment was in process before that
18 | date.  Thus, the court finds that the filing of the Motion was
19 | necessary for the debtors to obtain the return of that payment.[11]
20 | The Motion was also necessary for the debtors to obtain the two
21 | $17 "debt management fees," not received by the trustee's office
22 | from the VA until August 21 and September 4.

23 |

24 |     11.  Indeed, the VA states that "[g]iven the confusion
caused by Debtors' failure to give proper notice, it was not
25 | until this motion was filed that the VA became aware that the
stimulus payment had also been offset."  Opposition to the
26 | Debtors' Motion for Sanctions, filed August 19, 2008, DN 28
("Opposition"), 5:17-18.  This statement is directly contradicted
27 | by Ms. Chhay's June 20, 2008 e-mail to the VA's counsel,
responded to four minutes later, when the VA's counsel challenged
28 | Ms. Chhay to "go right ahead and file," and threatened to "fight
hard."

1    Using a "best defense is a good offense" strategy, the VA
2    attacks the debtors.  The VA states that "Mrs. Werner knowingly
3    received VA pension benefits to which she was not entitled and
4    failed to pay them back," and accuses her of filing a misleading
5    declaration.  Opposition, 1:23-24, 6:6-20.  The VA also claims it
6    was legally entitled to offset a portion of the debtors' tax
7    refund.  Neither of these points, even if accurate, is relevant
8    to the questions of whether the VA violated the automatic stay,
9    and if so, what damages should be awarded the debtors.[12]

10    The court concludes that the VA violated the automatic stay
11    when it failed to return the $17 balance of the tax refund
12    promptly after Ms. Chhay contacted the VA's counsel in early June
13    and when it failed to return the $600 stimulus payment promptly
14    after Ms. Chhay advised the VA's counsel of its interception on
15    June 20.  The court also concludes that the debtors, through
16    counsel, made reasonable efforts to resolve these issues short of
17    filing a motion, but their efforts were rebuffed.  The evidence
18    demonstrates, without contradiction, that no effort was made to
19    return either of these sums until after the Motion was filed.

20    —————————————

21    12.  The court finds troubling, however, Ms. Medeiros'
conclusory testimony that "Mrs. Werner was regularly advised that
22    she was required to report any changes to her income and any
changes to her marital status, . . . which reporting requirements
23    she disregarded."  The supporting exhibits (DNs 30, 31) are far
from conclusive on, at least, the remarriage question.  Only one
24    -- Exhibit 4, printed from the VA's website on August 14, 2008 --
refers to an "unmarried surviving spouse."  Exhibits 2 and 3 --
25    the application form and verification form -- both ask whether
the surviving spouse has remarried since the death of the
26    veteran.  Neither informs the spouse that he or she will not
qualify or no longer qualifies if the answer is yes.  Exhibit 6,
27    a form letter from the VA to Billie Jaramillo, contains a list
entitled "What Are Your Responsibilities?"  The list contains
28    five changes of which Ms. Jaramillo was to inform the VA --
remarriage is not among them.

### III. CONCLUSION

The VA failed to fully correct its initial stay violations until September 4, 2008, almost six months after Mr. Wolff's letter to what the VA concedes was the correct address for "effective" notice, almost three months after Ms. Chhay made her efforts, and over a month after the Motion was filed. This ongoing failure to remedy the situation itself violated the stay.[13] Were a remedy not available for this type of delaying tactic, the automatic stay would hold very little value.

For the reasons addressed above, the debtors' request for an award of their attorney's fees incurred in addressing the stay violations, for the time period April 18 through September 17, 2008, a total of $4,037.50, and costs reimbursement of $209, will be granted. The court finds this fee request both reasonable and necessary to remedy the VA's stay violation.

The additional damages sought are in the nature of emotional distress damages. Such damages are recoverable under § 362(k). Dawson v. Wash. Mut. Bank (In re Dawson), 390 F.3d 1139, 1148 (9th Cir. 2004). However, the evidence in this case, in the form of two declarations of debtor Billie Werner, is simply insufficient to clearly establish significant emotional harm. Nor is the evidence sufficient to demonstrate a causal connection between the stay violation and the alleged harm, as for example, with the cancellation of a trip to a friend's 60th birthday party.

---

13. The knowing retention of funds taken in violation of the automatic stay is itself a violation of the stay. California Empl. Dev. Dep't v. Taxel (In re Del Mission), 98 F.3d 1147, 1151, 1152 (9th Cir. 1996).

The court will award a total of $4,246.50 in damages in favor of the debtors and against the VA.

The court will issue an appropriate order.

Dated: November 25, 2008

Robert Bardwil
ROBERT S. BARDWIL
United States Bankruptcy Judge

## CERTIFICATE OF MAILING

I, Andrea Lovgren, in the performance of my duties as Deputy Clerk to the Honorable Robert S. Bardwil, mailed by ordinary mail a true copy of the attached document on today's date to each of the parties listed below:

Office of the US Trustee
501 "I" Street, 7th Floor
Sacramento, CA 95814

Michael Werner
P.O. Box 763
Victor, CA 95253

Mark Wolff
8861 Williamson Dr., #30
Elk Grove, CA 95624-7920

Lawrence Loheit
P.O. Box 1858
Sacramento, CA 95812-1858

McGregor Scott
United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814-2322

DATE: November 25, 2008

_____
Deputy Clerk